**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SILVONUS SHANNON (#M20525), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 13 C 4135 |
| v. | ) | |
| | ) | |
| RANDY PFISTER, Warden, Pontiac | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

On June 4, 2013, Petitioner Silvonus Shannon, by counsel, filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Shannon's habeas petition. The Court also declines to certify any issues for appeal because Shannon has not shown that reasonable jurists would debate that the Court should have resolved his habeas petition in a different manner. *See* 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

Shannon does not present clear and convincing evidence challenging the statement of facts in the last state court decision to address his arguments on the merits, and thus the Court presumes the Illinois Appellate Court's facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Bolton v. Akpore,* ___ F.3d ___, 2013 WL 4840483 (7th Cir. Sept. 12, 2013). The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court on direct appeal in *People v. Shannon,* No. 1-1-1433, 2012 WL 6962106 (1st Dist. Apr. 24, 2012) (unpublished).

## I.     Factual Background

On the afternoon of September 24, 2009, a fight broke out near the Agape Community

Center on 111th Street in the Roseland neighborhood of Chicago.  As a result of the fight, the

victim, Derrion Albert, died,  Many of the individuals at the scene of the fight either attended

Roseland's Christian Fenger Academy ("Fenger") high school or were former students.  Due to

school closings, students who lived in Altgeld Gardens attended Fenger, as well.  According to

trial testimony, a considerable amount of animosity existed between the students from Altgeld

Gardens and Roseland.

During the fight, Shannon, along with two other individuals charged with Albert's

murder, Eric Carson and Eugene Riley, were caught on videotape, along with other individuals.

The videotape depicts Carson hitting the victim with a stick and Riley swinging a piece of wood

hitting the victim in the head.  In addition, the videotape shows what appears to be Shannon

kicking the victim.  Eyewitness testimony was consistent with the videotape.  At trial, Shannon

testified on his own behalf stating that prior to the fight, he was hit in the head with a board and

that he could not remember kicking the victim in the head.  On rebuttal, the State called Chicago

Police Detective Michelle Moore-Grose, who testified about her interview with Shannon three

days after the fight.  According to Detective Moore-Grose, Shannon admitted to kicking the

victim three times in the body and once in the face.

After deliberating over three hours, the jury found Shannon guilty of first degree felony

murder.  When the jury submitted the written verdict to the court, they also gave the trial court a

note in which seven jurors requested that the judge show mercy when sentencing Shannon.  The

judge did not reveal the note or its contents to the parties.  Instead, he placed the note in the court

file.

At the sentencing hearing, the State presented victim impact statements from Albert's relatives. Shannon presented the testimony of his uncle, his best friend, a cousin, and an English teacher from Fenger, as well as his own testimony. At the end of evidence, the trial court stated that Shannon had a lot going on in his life outside of the few minutes depicted on the videotape, but that Shannon had not taken responsibility for his actions. The Circuit Court then sentenced Shannon to 32 years in prison.

## II.     Procedural Background

As discussed, on January 11, 2011, following a jury trial in the Circuit Court of Cook County, the jury convicted Shannon of first degree felony murder in violation of 720 ILCS 5/9-1(a). Thereafter, the Circuit Court sentenced Shannon to 32 years in prison. Shannon appealed to the Illinois Appellate Court, First District, arguing the following claims: (1) the trial court erroneously denied his motions for a directed verdict; (2) the trial court failed to disclose to the parties that the jury sent a note with the verdict asking the trial court to show mercy in sentencing him; (3) the trial court erroneously refused to allow the jury to view a police report during their deliberations; (4) the trial court erred by refusing Shannon's proffered jury instructions concerning "intent" and "knowledge-willfulness;" and (5) the trial court abused its discretion in denying Shannon's motion to reconsider his 32-year sentence. On April 24, 2012, the Illinois Appellate Court affirmed the judgment of the Circuit Court.

Shannon then filed a petition for leave to appeal ("PLA") in the Supreme Court of Illinois raising the following claims: (1) the Illinois Appellate Court misapplied Illinois law regarding felony murder; and (2) the Illinois Appellate Court erroneously held that the Circuit Court was

not required to inform Shannon about the jury's ex parte communication to the judge asking for

leniency in sentencing Shannon.  On October 31, 2012, the Supreme Court of Illinois summarily

denied Shannon's PLA.  From the record, it appears that Shannon did not file a petition to the

United States Supreme Court for a writ of certiorari nor a post-conviction petition pursuant to the

Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*

On June 4, 2013, Shannon filed the present petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254(d).  Shannon brings one claim in his habeas petition, namely, that the trial

court violated his due process and Sixth Amendment rights to be present at all stages of his trial

when the court failed to disclose to the parties that the jury sent a note with its verdict asking the

judge to show mercy in sentencing him.  Respondent does not argue that Shannon procedurally

defaulted this claim, so the Court turns to the merits of this constitutional claim.

**LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas

relief cannot be granted unless the state court's decision was contrary to, or an unreasonable

application of federal law clearly established by the Supreme Court.  *See Williams v. Taylor,* 529

U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Warren v. Baenen,* 712 F.3d 1090,

1096 (7th Cir. 2013).  In *Williams*, the Supreme Court explained that a state court's decision is

"contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law" or "if the state court confronts facts

that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a

result opposite to ours."  *See id.* at 405; *see also Kamlager v. Pollard,* 715 F.3d 1010, 1015 (7th

Cir. 2013) ("A state court decision is 'contrary to' federal law if it applies the wrong legal

standard established by Supreme Court precedent or decides a case differently than the Supreme

Court on materially indistinguishable facts.").

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner

must demonstrate that although the state court identified the correct legal rule, it unreasonably

applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407; *see also*

*Taylor v. Grounds,* 721 F.3d 809, 817 (7th Cir. 2013). "The state court's application of federal

law must not only be incorrect, but 'objectively unreasonable.'" *Rann v. Atchison,* 689 F.3d 832,

835 (7th Cir. 2012); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal

law is different from an *incorrect* application of federal law") (emphasis in original). To be

considered objectively unreasonable, a state court's decision must be "well outside the

boundaries of permissible differences of opinion." *Kamlager,* 715 F.3d at 1016 (citation

omitted).

## ANALYSIS

### I.      Habeas Claim

Shannon brings one habeas claim — the trial court violated his due process and Sixth

Amendment rights to be present at all stages of his trial when the court failed to disclose to the

parties that the jury sent a note with the guilty verdict asking the court to show mercy when

sentencing him. "[A] criminal defendant's right to be present at trial is constitutional bedrock"

under the Sixth Amendment. *See United States v. Benabe,* 654 F.3d 753, 768 (7th Cir. 2011)

(citing *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)); *see also*

*United States v. Neff,* 10 F.3d 1321, 1323 (7th Cir. 1993) ("A criminal defendant's right to be

present at every stage of trial is rooted to a large extent in the Confrontation Clause of the Sixth

Amendment."). "The Due Process Clauses of the Fifth and Fourteenth Amendments offer

additional protection" because under "due process, a defendant must be present 'to the extent

that a fair and just hearing would be thwarted by his absence.'" *Benabe,* 654 F.2d at 768

(citation omitted). Specifically, "a defendant is guaranteed the right to be present at any stage of

the criminal proceeding that is critical to its outcome if his presence would contribute to the

fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d

631 (1987).

In addressing Shannon's argument on direct appeal, the Illinois Appellate Court for the

First District reasoned as follows:

> Defendant's next contention on appeal is that the trial judge failed to
> disclose a note that it received from the jury, in violation of defendant's Sixth
> Amendment right to participate in every stage of his trial. A criminal defendant
> has a constitutional right to a public trial, and to appear and participate in person
> and by counsel at all proceedings which involve his substantial rights (U.S.
> Const., amend. VI; Ill. Const.1970, art. I, 8; Ill.Rev.Stat.1987, ch. 38, par. 115–4;
> *People v. Mallett*, 30 Ill.2d 136, 141–42 (1964)), so that he may know what is
> being done, make objections, and take such action as he deems best to secure his
> rights and for his protection and defense. *People v. Childs,* 159 Ill.2d 217, 227
> (1994). An ex parte communication between the judge and the jury after the jury
> has retired to deliberate, except one held in open court and in defendant's
> presence, deprives defendant of those fundamental rights. *Childs,* 159 Ill.2d at
> 227.
>
> The record here reveals that after deliberating for over three hours, the
> jury indicated that it had reached a verdict. The jury was brought out, and the
> court asked the foreperson if the jury had reached a verdict. The foreperson
> responded in the affirmative. The judge asked the foreperson to hand the verdict
> to the deputy sheriff. The trial judge then stated, "I am in receipt of a verdict. It
> reads as follows: 'We, the jury, find the defendant ... guilty of first degree
> murder.'" The trial court noted that the verdict had been signed by all of the
> jurors and asked defense counsel if he wished to poll the jurors. Defense counsel
> then asked each juror if that was his or her verdict, to which each juror responded
> in the affirmative.
>
> Apparently, several weeks later, defense counsel found a note in the court

file from members of the jury. The note, which had been signed by seven jurors, read:

> "Dear Judge Ford,
>
> We the jurors ask that you show mercy in sentencing [defendant]."

Defense counsel raised the issue of the note at the hearing on defendant's motion for a new trial, and the trial court stated that the note had been "handed up along with the verdict" after deliberations. The trial court placed the note in the court file that day, where the note had remained available to the public.

Defendant contends that the trial court acted improperly by not disclosing the note at the time of receipt, thus depriving him of his right to be present at every aspect of his trial. Specifically, defendant claims that when the trial court failed to disclose the note it received from the jury, it deprived him of the ability to poll the jurors on whether the guilty verdict would have been rendered had the jurors known that the trial judge did not have to grant their request to show mercy in sentencing. Defendant further contends that had the jurors been instructed that the court was not bound by their request to show mercy in sentencing, it might have changed a vote or two.

Defendant relies heavily on the United States Supreme Court case of *Rogers v. United States*, 422 U.S. 35 (1975). In *Rogers*, after the jury had been deliberating for two hours, it sent out a note asking the trial judge whether he would accept a verdict of "Guilty as charged with extreme mercy of the Court." Without notifying the defendant or his counsel, the court instructed the marshal "to advise the jury that the Court's answer was in the affirmative." Five minutes later, the jury returned a verdict of guilty with the indicated recommendation of extreme mercy. *Rogers,* 422 U.S. at 36–37.

The Supreme Court in *Rogers* noted that generally, "a recommendation of leniency made by a jury without statutory authorization does not affect the validity of the verdict and may be disregarded by the sentencing judge." 422 U.S. at 38 (citing *Cook v. United States,* 379 F.2d 966, 970 (5th Circuit 1967)). However, an exception to this general rule arises "where the circumstances of the recommendation cast doubt upon the unqualified nature of the verdict." *Id.* In *Rogers,* the Supreme Court found that the fact that the jury, which had been deliberating for almost two hours without reaching a verdict, returned a verdict of "guilty with extreme mercy" within five minutes of being told "'unconditionally and unequivocally that it could recommend leniency,'" strongly suggested that the trial judge's response may have induced unanimity by giving members of the jury who had previously hesitated about reaching a guilty verdict the impression that the recommendation might be an acceptable compromise. *Rogers,* 422 U.S.

at 40 (citing *United States v. Glick*, 463, F.2d 491 (2nd Circuit 1972)).  The Court
went on to state that defense counsel did not learn of the "court's communication"
until after the fact, and the only indication that the "court had unilaterally
communicated with the jury comes from the note itself."  *Id.* at 41.

      We find the circumstances in *Rogers* to be inapposite to the case at bar.
Here, the guilty verdict was reached before the jury sent a note to the trial court.
The note was handed to the trial judge at the same time as the guilty verdict was
handed to him.  The jury did not ask for a response from the trial court regarding
leniency during deliberations, and it did not indicate that its finding of guilt was
based on an understanding that the trial court would show leniency.  Moreover,
the impropriety that the Supreme Court noted on the part of the trial court was not
present in the case at bar.  The Court in *Rogers* emphasized that the trial judge's
response could have induced certain jurors into reaching a guilty verdict if they
were under the impression that the recommendation would be taken under
advisement.  Here, there was no question posed to the trial court, and no response
given, before the guilty verdict was reached.  Thus, it cannot be inferred that the
trial court induced any jurors to make a decision that they otherwise would not
have made.  Rather, the jurors indicated that they had reached a verdict before the
trial judge had even seen the note.

      Furthermore, our supreme court in *Childs* stated that "the jury verdict will
not be set aside where it is apparent that no injury or prejudice resulted from a
communication to the jury either by the trial court or a third person outside the
presence of the defendant and his counsel." (Emphasis added).  *Childs,* 159 Ill.2d
at 227.  Here, there was no communication whatsoever made by the trial court to
the jury which indicated that it was going to grant the juror's request to show
mercy.  We therefore find that there was no improper ex parte communication on
the part of the trial court in the case at bar, and thus defendant was not deprived of
his Sixth Amendment right to be present at trial.  Because there was no ex parte
communication, we need not consider whether the State met its burden of proving
the ex parte communication was harmless.  *See Childs,* 159 Ill.2d at 227.

*People v. Shannon*, 2012 WL 6962106, at *13-15.

Under the circumstances, the Illinois Appellate Court's decision was not contrary to or an

unreasonable application of clearly established Supreme Court law.  *See Kamlager,* 715 F.3d at

1015-16.  As the Illinois Appellate Court recognized, in general, "a recommendation of leniency

made by a jury without statutory authorization does not affect the validity of the verdict and may

be disregarded by the sentencing judge."  *Rogers v. United States,* 422 U.S. 35, 38, 95 S.Ct.

2091, 45 L.Ed.2d 1 (1975); *see also Freeman v. Franzen,* 695 F.2d 485, 490 (7th Cir. 1982)

("Ordinarily a recommendation from the jury is disregarded, and does not impeach the validity

of the verdict.") (internal citation omitted). In *Rogers*, the Supreme Court, relying on earlier

Supreme Court precedent and Federal Rule of Criminal Procedure 43(a), concluded that a

criminal defendant's right to be present at every stage included communications with a

deliberating jury.[1]  *See id.* at 39; *Neff*, 10 F.3d at 1324.  As the Seventh Circuit clarifies, "[t]he

procedures a district judge should follow when presented with a communication from a

deliberating jury were first set forth in *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45

L.Ed.2d 1 (1975).  In that case the Supreme Court stated that in such instances: (1) the jury's

questions should be answered in open court; and (2) defendant's attorney should be given an

opportunity to be heard before the district judge responds to the jury's questions." *Neff,* 10 F.3d

at 1324.

The facts in *Rogers* illustrate the importance of this procedure.  As the *Rogers* Court

explained:

> The fact that the jury, which had been deliberating for almost two hours without
> reaching a verdict, returned a verdict of 'guilty with extreme mercy' within five
> minutes 'after being told unconditionally and unequivocally that it could
> recommend leniency,' strongly suggests that the trial judge's response may have
> induced unanimity by giving members of the jury who had previously hesitated

---

[1] Respondent argues that because the *Rogers* Court relied upon Federal Rule of
Criminal Procedure 43(a) in making its determination, *Rogers* is not clearly established Supreme
Court law as required under 28 U.S.C. 2254(d)(1).  The *Rogers* Court, however, relied upon
earlier Supreme Court precedent, along with Rule 43(a), and thus Respondent's argument is
misplaced.  *See Rogers*, 422 U.S. at 38-40 (citing *Shields v. United States,* 273 U.S. 583, 47 S.Ct.
478, 71 L.Ed. 787 (1927); *Fillippon v. Albion Vein Slate Co.,* 250 U.S. 76, 39 S.Ct. 435, 63
L.Ed. 853 (1919)).  The Court, however, recognizes that the scope of Rule 43(a) is broader than
the federal constitutional right to be present at trial.  *See United States v. Watkins*, 983 F.2d
1413, 1418 n.5 (7th Cir. 1993).

about reaching a guilty verdict the impression that the recommendation might be
an acceptable compromise.

*Id*. at 40 (citation omitted).

Here, the Illinois Appellate Court distinguished the facts in *Rogers* from the present case

because the Shannon jury — after deliberating for three hours — informed the trial court that it

had reached a verdict.  When the deputy sheriff brought the jury to the courtroom, the trial court

asked the foreperson if the jury had reached a verdict and the foreperson responded yes.  As

such, the jury indicated that it was no longer deliberating when they gave the trial judge their

note, along with the written verdict form, nor did the jury's note ask for the judge to respond to

any inquiry as in *Rogers*.  In contrast to *Rogers*, the judge did not respond to the jury's note in

advance of the verdict, raising the possibility that a response may have created a compromise

verdict.  Moreover, after the trial judge read the guilty verdict and stated that the verdict had

been signed by all of the jurors, he asked defense counsel if he wished to poll the jurors.

Defense counsel then asked each juror if that was his or her verdict, to which each juror

responded yes.  Under these circumstances, the Illinois Appellate Court's conclusion that the

unqualified nature of the verdict was not in question — as it was in *Rogers* —  was not contrary

to or an unreasonable application of *Rogers*.  *See Newman v. Harrington,* 726 F.3d 921, 927 (7th

Cir. 2013) ("Federal habeas courts are generally 'limited to a deferential review of the

reasonableness, rather than the absolute correctness, of a state court decision.'") (citation

omitted).

Shannon's argument that the Illinois Appellate Court confused the issue by stating that

the trial court made an ex parte communication to the jury rather than the jury made an ex parte

communication to the judge is a distinction without a difference.  It is abundantly clear from the

Illinois Appellate Court's decision that the court understood the nature of the constitutional issue at hand, namely, whether the jury's note about leniency handed up with the verdict required the protections set forth in *Rogers*. Further, Shannon's argument that the Illinois Appellate Court misstated the facts surrounding defense counsel's discovery of the jurors' note fares no better. Whether a former juror contacted defense counsel about the note or whether counsel found the note in the public file is of no consequence because the Illinois Appellate Court did not base its decision on how defense counsel found the note.

Finally, although Shannon requests an evidentiary hearing, he did not develop his argument under 28 U.S.C. § 2254(e)(2) or *Cullen v. Pinholster,* ___U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011). The Court therefore denies Shannon's request for an evidentiary hearing.

## II.     Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Shannon a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Resendez v. Knight,* 653 F.3d 445, 446 (7th Cir. 2011). Further, a habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right.

*See Miller-El,* 537 U.S. at 336; *Narvaez v. United States,* 641 F.3d 877, 881 (7th Cir. 2011); 28

U.S.C. § 2253(c)(2).  Under this standard, Shannon must demonstrate that "reasonable jurists

could debate whether (or, for that matter, agree that) the petition should have been resolved in a

different manner or that the issues presented were adequate to deserve encouragement to proceed

further."  *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct.

1595, 146 L.Ed.2d 542 (2000)).

Here, Shannon does not argue, nor does the Court conclude, that reasonable jurists would

debate the Court's conclusion that the Illinois Appellate Court's decision was not contrary to or

an unreasonable application of clearly established Supreme Court authority.  Therefore, the

Court declines to certify any issues for appeal.  *See* 28 U.S.C. § 2253(c)(2).

### CONCLUSION

For these reasons, the Court denies Shannon's petition for a writ of habeas corpus and

declines to certify any issues for appeal.  *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** October 23, 2013

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**

12